FILED
CLERK

5/21/2025 12:22 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────────X   For Online Publication Only
LISA PINKARD,

           Plaintiff,

  -against-   **ORDER**
           18-cv-5590 (JMA)(AYS)
COUNTY OF SUFFOLK, SUFFOLK COUNTY
LEGISLATURE, and MONICA MARTINEZ,

           Defendant.
───────────────────────────────────X

**AZRACK, United States District Judge:**

    Plaintiff commenced this suit in federal district court, alleging that the two municipal defendants violated the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA"), and that all three defendants violated New York State Human Rights Law ("NYSHRL"). Currently pending before the Court is Defendants' motion for summary judgment. After the parties briefed the summary judgment motion, the Court issued an Order to Show Cause that directed the parties to address certain questions concerning the Plaintiff's ADA and the FMLA claims.

    For the reasons stated below, the Court dismisses Plaintiff's ADA claims without prejudice, dismisses Plaintiff's FMLA interference claim with prejudice, and declines to exercise supplemental jurisdiction over Plaintiff's NYSHRL claims.

### I. BACKGROUND

    In January 2014, Defendant Monica Martinez—who had been elected to the Suffolk County Legislature for the first time in 2013—hired Plaintiff to be her chief of staff. (Pl.'s 56.1 ¶ 1, ECF No. 34-49; Defs. Reply 56.1 ¶¶ 39–41, ECF No. 34-53.) During Plaintiff's employment, Martinez's office had only three employees—Plaintiff, and two other employees who worked as

1

legislative aides. (Dep. of Monica Martinez ("Martinez Dep.") at 22–23, 25.)

On October 31, 2017, Plaintiff was injured in a motor vehicle accident while performing her job duties. (Pl. 56.1 ¶ 2; Defs. Reply 56.1 ¶ 45.)) As a result of the accident, Plaintiff went out on leave and did not return to work until December 4, 2017. (Pl. 56.1 ¶ 8.) Plaintiff's doctor, Jeffrey Perry, D.O., indicated—in a disability certificate that Plaintiff provided to Martinez—that Plaintiff should not work more than 35 hours per week, lift more than 10 pounds, or engage in prolonged standing or sitting. (Pl. Ex. 5, ECF No. 34-27; Defs. Rely 56.1 ¶ 66.) When Plaintiff returned to work on December 4, 2017, Martinez restructured Plaintiff's duties and responsibilities. (Pl. 56.1 ¶ 9.) That same day, Plaintiff complained to Martinez about this change in her duties. (Pl. Aff. ¶ 62–63, ECF No. 34-48.) When Martinez accused Plaintiff of trying to "'build a case against her,'" Plaintiff denied Martinez's allegation, but told Martinez that Plaintiff was "making a complaint that [Martinez] was discriminating against me because of my disability." (Pl. Aff. ¶ 64–65.) At the end of the day, Plaintiff told Martinez that she was going to see her doctor due to severe migraines and pain in her neck and shoulders that she experienced after returning to work. (Pl. Aff. ¶ 68.) On December 5, Plaintiff spoke with Dr. Perry, who indicated, in disability certificates dated December 6, 2017 and December 27, 2017, that Plaintiff was 100% disabled and could not return to work until January 4, 2018. (Pl. Exs. 8–9, ECF Nos. 34-30, 34-31.) Plaintiff maintains that this was a direct result of the stress and anxiety caused by Martinez, which exacerbated Plaintiff's injuries. (Pl. Aff. ¶¶ 67–68.)

Based on Dr. Perry's determinations, Plaintiff went on medical leave through January 3, 2018. (Pl. 56.1 ¶ 11.) On January 4, 2018, Plaintiff returned to work on light duty, which included a 35-hour work week.[1] (Pl. 56.1 ¶ 14; Pl. Ex. 10, ECF No. 34-32.) The next day, Martinez

---

[1] Prior to her injury, Plaintiff often worked 60 or 70 hours per week. (Dep. of Lisa Pinkard ("Pl. Dep.") at 34.)

2

removed Plaintiff's "chief of staff" title, informed Plaintiff that going forward she would be a "legislative aide," and removed Plaintiff's former supervisory duties over the other two legislative aides. (Pl. 56.1 ¶ 16; Defs. Reply 56.1 ¶ 86; Pl. Aff. ¶¶ 81–84; Martinez Dep. 35, 54; Pl. Dep. 42–43.) After working as a legislative aide for less than a month, Plaintiff was terminated on January 31, 2018. (Defs. Reply 56.1 ¶ 93; Pl. 56.1 ¶ 24.)

Plaintiff alleges that she was terminated due to her disabilities and was also retaliated against her for complaining about disability discrimination. Plaintiff also alleges that Defendants failed to provide her with required notices about her rights under the FMLA.

Currently pending before the Court is Defendants' motion for summary judgment, the Court's Order to Show Cause, and the parties' responses to the Order to Show Cause.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate when the pleadings, depositions, interrogatories, and affidavits demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The movant bears the burden of demonstrating that "no genuine issue of material fact exists." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law,'" while "[a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 97 (2d Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

In deciding the motion, the Court "is not to weigh the evidence but is instead required to

3

view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 122 (2d Cir. 2004); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (internal quotation omitted).

B. **Federal Disability Discrimination Claims – ADA and GERA**

The Government Employee Rights Act of 1991 ("GERA") establishes "procedures to protect the rights of certain government employees, with respect to their public employment, to be free from discrimination on the basis of . . . disability" and other protected characteristics. 42 U.S.C. § 2000e-16a. GERA applies to claims that a plaintiff's rights under the ADA and Rehabilitation Act have been violated. See Fischer v. New York State Dep't of Law, 812 F.3d 268, 271–72, 278 (2d Cir. 2016). An employee is covered by GERA if she was "chosen or appointed, by a person elected to [State or local] public office": "(1) to be a member of the elected official's personal staff; (2) to serve the elected official on the policymaking level; or (3) to serve the elected official as an immediate advisor with respect to the exercise of the constitutional or legal powers of the office." 42 U.S.C. § 2000e–16c(a). The Second Circuit has collectively referred to these three categories of employees as "special-level appointees." Fischer, 812 F.3d at

4

278.

Under GERA, a covered claim is litigated in an administrative proceeding before an administrative law judge ("ALJ") and the claimant can administratively appeal the ALJ's decision to the Equal Employment Opportunity Commission ("EEOC"). Id. at 278–79 (citing 29 C.F.R. § 1603.301). A covered employee "aggrieved by a final order of the EEOC may seek judicial review in a federal circuit court." Id. at 279 (citing 42 U.S.C. § 2000e–16c(c)).

In Fischer, the Second Circuit explained that GERA "shift[ed] . . . the initial adjudication of disability discrimination claims from a judicial to an administrative forum" and indicated that, if a plaintiff is found to be a special-level appointee under GERA, then the plaintiff "can pursue her claim only in an administrative proceeding." Id. at 279–80; see also id. at 279 (explaining that that GERA "changed the forum in which [Rehabilitation Act claims] could be initiated").[2]

The Court's Order to Show Cause directed the parties to address "whether Plaintiff is covered by GERA and can 'pursue [her disability discrimination claim] only in an administrative proceeding' under GERA." (ECF No. 35 at 2.)

Plaintiff's response to the Order to Show Cause advances three arguments. (ECF No. 38.) These arguments are addressed below in turn—none are persuasive.

### 1. This Issue is Properly Before the Court and Plaintiff Has Not Identified any Additional Discovery She Would Have Pursued

Plaintiff asserts that the Court should not consider GERA at all (or at the very least should not grant Defendants' summary judgment on this issue) because Defendants did not raise any defenses concerning GERA during the pendency of this case and the parties have not had an opportunity to brief or conduct discovery on this issue.

---

[2] While Fischer brought a disability discrimination under the Rehabilitation Act and not the ADA, Plaintiff has not argued that the Rehabilitation Act and the ADA differ, in any material respects, with respect to the relevant issues here.

This procedural objection is not persuasive. This issue implicates the Court's subject matter jurisdiction. See Fischer, 812 F.3d at 280. When an issue implicates the Court's subject matter jurisdiction, it is appropriate for the Court to raise the issue sua sponte. Moreover, Defendants' response to the Order to Show Cause indicates that Defendants now also affirmatively seek dismissal on this ground. This issue is properly before the Court.

Plaintiff also had an opportunity to brief this issue and did not identify any specific discovery that she would have pursued concerning this issue. Additionally, given Plaintiff's lengthy tenure working for Martinez, Plaintiff had ample personal knowledge about the chief of staff and legislative aide positions in Martinez's office and could have submitted a supplemental affidavit if she believed that any additional facts were germane to the question of whether Plaintiff was on Martinez's personal staff.

**2. Plaintiff Was Part of Martinez's Personal Staff**

Plaintiff argues that the question of whether she qualifies as part of Martinez's personal staff (or qualifies under the other two categories of "special-level appointees") is highly factual and, as such, cannot be decided on summary judgment. However, given the specific circumstances here, Plaintiff was clearly chosen by Martinez to be a member of her personal staff. No reasonable jury could find otherwise based on the record here.[3]

Although the Second Circuit has not directly addressed what constitutes "personal staff," the Second Circuit has suggested that an elected official's "personal staff" refers to persons who would work closely with the elected official. Kennedy v. New York, 167 F. Supp. 3d 451, 456–57 (W.D.N.Y. 2016) (citing EEOC v. State of Vermont, 904 F.2d 794, 798 (2d Cir. 1990) and

---

[3] The Court analyzes this issue under the standard applicable to summary judgment motions and, accordingly, has construed the evidence in the record in the light most favorable to plaintiff and has drawn all reasonable inferences in her favor.

Tranello v. Frey, 962 F.2d 244, 249 (2d Cir. 1992)). Courts look to whether an employee in plaintiff's position could be required to work closely with the elected official and focus on the general attributes of the position rather than on the actual performance of the job. Kennedy, 167 F. Supp. 3d at 457 (finding, on motion to dismiss, that Assembly Member's Director of Community Relations was part of his personal staff).

In analyzing whether a plaintiff was part of an elected official's personal staff, district courts in the Second Circuit have also looked to the following list of non-exhaustive factors identified by the Fifth Circuit in Teneyuca v. Bexar County, 767 F.2d 148 (5th Cir. 1985)):

> (1) whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

Id. at 151; see Kennedy, 167 F. Supp. 3d at 458; Smith v. Town of Hempstead, 21 F. Supp. 3d 202, 205 (E.D.N.Y. 2014).

Here, it cannot be disputed that an employee in Plaintiff's positions could be required to work closely with Martinez. And, in fact, Plaintiff did work closely with Martinez. Additionally, the factors identified in Teneyuca also indicate that Plaintiff was part of Martinez's personal staff.

Martinez—who had the authority to hire and remove Plaintiff—recruited, interviewed, hired, and eventually fired Plaintiff. (Defs.' Reply 56.1 ¶¶ 39–42; Pl. Aff. ¶ 4; Martinez Dep. 23–25.) Martinez exercised substantial—if not complete—control over both the chief of staff and legislative aide positions in her office. (Martinez Dep. 36, 140, 188.) Martinez had the authority to change Plaintiff's job duties, her job title, and to set her rate of pay, subject to available funding. (Pl. Aff. ¶¶ 50–52, 81; Pl. Dep. 42–43, 46; Martinez Dep. 35–37, 140, 188.)

7

Martinez also directly supervised Plaintiff's employment.[4]  (Defs. Reply 56.1 ¶ 42; Martinez Dep. 24.)

Plaintiff had a close working relationship with Martinez.  (Defs. Reply 56.1 ¶ 44.)  Martinez also worked closely with legislative aides.  (Id.; see also Def. Ex. J, ECF No. 34-11 (Jan. 11, 2018 text message from Martinez to Plaintiff asking Plaintiff to provide her thoughts on who Martinez should nominate as a "woman of distinction"); see also Dep. of Lora Gellerstein at 78 (explaining generally that aides "have to be able to kind of work symbiotically").)  The intimacy of the working relationship between Martinez and her staff was also apparent given that Martinez's staff consisted of only three employees.

Plaintiff's duties also evidence that she worked closely with Martinez and was a member of her personal staff.  (See Defs. Reply 56.1 ¶ 43; Pl. Dep. 8–9; see also Def. Ex. N (January 11, 2018 email from Martinez to Plaintiff and other two legislative aides stating that Martinez wanted to be copied on all emails to government departments and that the staff needed to update the "constituent sheet"); Pl. Dep. 43–44 (describing duties of legislative aides); Martinez Dep. 129 (describing  duties of legislative aides, including Plaintiff, after January 2018).)[5]  When Plaintiff

---

[4] When Plaintiff was chief of staff she reported directly to Martinez.  (Pl. 56.1 ¶ 4; Defs. Reply 56.1 ¶ 42.)  Although Plaintiff had some supervisory duties over the two legislative aides when she was chief of staff, in January 2018, Martinez made Plaintiff a legislative aide and removed Plaintiff's supervisory responsibilities.  Martinez, however, remained Plaintiff's direct supervisor.  (Pl. 56.1 ¶ 4.

[5] According to Plaintiff's affidavit, upon becoming a legislative aide in January 2018, many of the essential duties of her chief of staff position were removed and she now primarily performed unspecified "clerical work."  (Pl. Aff. ¶¶ 82, 86.)  However, even accepting those facts for purposes of summary judgment, Plaintiff was still part of Martinez's personal staff at all relevant times because, inter alia, courts look to the general attributes of the position and whether the employee could be required to work closely with the elected official.  See Kennedy, 167 F. Supp. 3d at 457.

The record also includes copies of formal job descriptions for legislative aide positions in the Suffolk County Legislature.  (Pl. Ex. 25.)  The job descriptions explain that the "Legislative Aide I" position—the position which Plaintiff alleges she assumed in January 2018—is tasked with:  (1) assisting in the research of resolutions prior to committee meetings; (2) assisting constituents; (3) acting as a liaison between constituents and various County, State, and Federal offices; (4) assisting in the planning of the agenda for committee meetings; and (5) performing various general office duties and related work.  (Pl. Ex. 25.)  This job description also indicates that Plaintiff was part of Martinez's personal staff.

"aid[ed] with everyday constituent work," Pl. Aff. ¶ 6, she was surely viewed as "represent[ing] [Martinez] in the eyes of the public," Teneyuca, 767 F.2d at 151. Plaintiff does not point any evidence suggesting otherwise.

Plaintiff generally asserts that the question of whether an employee is part of an elected official's "personal staff" is a highly factual inquiry (and that the term "personal staff" is narrowly construed). Plaintiff, however, does not even attempt to explain why, based on any of the specific evidence in this record, she falls outside of Martinez's personal staff. A reasonable jury could only find that Plaintiff was part of Martinez's personal staff. Accordingly, with respect to Plaintiff's claims that her rights under the ADA were violated, Plaintiff was required to initially adjudicate those claims in an administrative forum because GERA "changed the forum" in which such claims could be "initiated." Fischer, 812 F.3d at 279–80.

### 3. Plaintiff Did Not Comply with GERA's Procedural Requirements

Plaintiff contends that if she is a covered employee under GERA, she has "complied" with GERA and "unwittingly" satisfied GERA's administrative requirements by filing a Charge of Discrimination with the EEOC and receiving a right to sue letter from the EEOC. (ECF No. 38 at 4.) Plaintiff insists that this right to sue letter is a "final determination" and, as such, she is now "properly before this Court." (Id. at 5.)

Plaintiff's argument, however, misapprehends GERA's statutory scheme. First, a right to sue letter is not a "final order" from the EEOC under 42 U.S.C. § 2000e-16c(b)(1), which requires that the EEOC "determine whether a violation has occurred and shall set forth its determination in a final order."[6] Second, as Fischer makes clear, under GERA a covered employee "aggrieved by

---

[6] Plaintiff filed a charge of discrimination under the ADA and the Title VII of the Civil Rights Act. (Def. Ex. D, ECF No. 34-5.) Plaintiff's filing did not explicitly invoke GERA and it does not appear that the EEOC construed this filing as a complaint under GERA.

a final order of the EEOC may seek judicial review <u>in a federal circuit court</u>." <u>Fischer</u>, 812 F.3d at 279 (emphasis added). Thus, even if the right to sue letter Plaintiff received from the EEOC were, somehow, a "final order" under GERA, Plaintiff would have had to seek review directly from the Second Circuit. Accordingly, Plaintiff's federal disability discrimination claims are not properly before this Court.

Because this Court lacks subject matter jurisdiction over Plaintiff's claims that her rights under the ADA were violated, the Court dismisses those claims without prejudice.

## C. <u>Federal Disability Discrimination Claims - Section 1983</u>

Plaintiff asserts that, if her ADA claims are dismissed, she should be permitted to pursue a disability discrimination claim under Section 1983 based on an alleged violation of the equal protection clause. (ECF No. 38 at 8–9.) Plaintiff contends that the Court should "construe, or allow the parties an opportunity to brief, whether Plaintiff set forth viable claims under" Section 1983. (<u>Id.</u>)

As the Second Circuit has explained: (1) "disability is not a suspect classification under the Equal Protection Clause"; (2) a "class of one" claim does not exist in the public employment context; and (3) "the Equal Protection Clause cannot provide a basis for asserting claims for reasonable accommodations." <u>Chick v. Cnty. of Suffolk</u>, 546 F. App'x 58, 60 (2d Cir. 2013).

Plaintiff does not have a potentially "cognizable" claim that she was discriminated against based on her disability. <u>Id.</u> Nothing in the record or Plaintiff's response to the Order to the Show suggests that Plaintiff has a plausible disability discrimination claim premised on an alleged violation of the Equal Protection Clause.

Plaintiff, citing <u>Sharpe v. City of New York</u>, No. 11 CIV. 5494, 2013 WL 2356063, at *3 n.5 (E.D.N.Y. May 29, 2013), seems to suggest that she has a "class of one" equal protection claim

10

based on her disability. However, Sharpe itself acknowledges that the "law is clear that public employees may not proceed on a class of one theory." Id. at *3 (citing Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 598 (2008)); see also Chick, 546 F. App'x at 60.

Plaintiff's reliance on Eskenazi-McGibney v. Connetquot Cent. Sch. Dist., 84 F. Supp. 3d 221, 236 (E.D.N.Y. 2015), is similarly misplaced. While the court in Eskenazi-McGibney, construed the plaintiff's complaint to raise "a 'class of one' equal protection claim based on his disability," Eskenazi-McGibney was brought by a student, not a public employee, and, thus, does not help Plaintiff.

Plaintiff does not identify any potentially cognizable disability discrimination claims under Section 1983 and the Court therefore denies Plaintiff's request to submit further briefing concerning such claims.

### D. **FMLA Interference Claims**

"[T]o prevail on a claim of interference with her FMLA rights, a plaintiff must establish: 1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which she was entitled under the FMLA." Graziadio v. Culinary Inst. of Am., 817 F.3d 415, 424 (2d Cir. 2016).

#### 1. Plaintiff is not a Covered Employee under the FMLA

The FMLA looks to the Fair Labor Standards Act ("FLSA") for its definition of a covered employee. 29 U.S.C. § 2611(3). Under the FLSA, an individual employed by a state or a political subdivision of a state is not an employee when the individual "is not subject to the civil service laws of the State," and is selected by an elected official "to be a member of [her] personal staff." 29 U.S.C. § 203(e)(2)(C)(ii). The Court's Order to Show Cause directed the parties to address

11

"whether Plaintiff is an employee under the FMLA, including whether Plaintiff is subject to the civil service laws of New York." (ECF No. 35 at 3.)

As an initial matter, Plaintiff asserts that the Court should not consider these provisions because: (1) Defendants allegedly have never raised the "defense that Plaintiff was not a 'covered employee' under the FMLA"[]; and (2) the parties did not have an opportunity to brief these issues or evaluate them during discovery. (ECF No. 38 at 9–10.) These procedural objections are not persuasive.

First, Defendants' summary judgment brief asserted that the record was devoid of evidence that Plaintiff was an eligible employee under the FLSA. (ECF No. 34-20 at 20.) While Defendants did not explicitly reference the statutory provisions cited above, their argument on this point was sufficient to raise this issue. Moreover, to the extent Defendants' briefing was ambiguous or deficient, the Court highlighted the relevance of these statutory provisions in its Order to Show Cause and gave the parties an opportunity to brief this issue. Additionally, Defendants now affirmatively assert that Plaintiff does not qualify as an employee under these provisions. Thus, this issue is properly before the Court.[7]

Second, as with Plaintiff's federal disability discrimination claims, Plaintiff has not pointed to any specific discovery that she needs to address whether she was a covered employee under the FMLA. Moreover, Plaintiff worked as Martinez's chief of staff for years and could have submitted another affidavit if she believed any additional facts were relevant to the question of whether she

---

[7] In determining whether Plaintiff is a covered employee under both the FMLA and GERA, the Court must determine whether Plaintiff was part of Martinez's personal staff. The overlap between these determinations is a further reason why the Court should examine this issue in connection with Plaintiff's FMLA claim. As noted above in the discussion of Plaintiff's federal disability discrimination claims, the question whether Plaintiff was part of Martinez's personal staff potentially implicates the Court's subject matter jurisdiction for those claims, which made it appropriate for the Court to raise that issue sua sponte. The fact that this issue is already before the Court in connection with Plaintiff's disability discrimination claims counsels in favor of also addressing this issue in connection with Plaintiff's FMLA claim.

is a covered employee under 29 U.S.C. § 203(e)(2)(C)(ii).

Turning to the merits of this issue, the record shows that Plaintiff was not an employee under § 203(e)(2)(C)(ii). No reasonable jury could find otherwise. As explained earlier, Plaintiff was clearly a member of Martinez's personal staff at all relevant times. Additionally, Plaintiff's positions were "not subject to the civil service laws of the State," 29 U.S.C. § 203(e)(2)(C)(ii). New York Civil Service Law § 35 states that all employees of legislative bodies (such as the Suffolk County Legislature) "whose principal functions and duties are directly related to the performance of the legislative functions of such body" are considered part of the "unclassified service" and are therefore exempt from New York's Civil Service Law. See Lifrak v. New York City Council, 389 F. Supp. 2d 500, 505 (S.D.N.Y. 2005) ("The case law that exists holds that unclassified employees are not subject to the State's civil service laws."). A reasonable jury could not find, based on the record here, that Plaintiff's principal functions and duties were "not directly related to the performance of the legislative functions" of the Suffolk County Legislature. Plaintiff does not even argue otherwise. Although the Court's Order to Show Cause explicitly directed the parties to address "whether Plaintiff is subject to the civil service laws of New York," Plaintiff's response did not address the applicability of New York Civil Service Law § 35 in any fashion.

The only argument Plaintiff raises about the factual record concerns the deposition testimony of Jennifer McNamara, the Director of Labor Relations. According to Plaintiff, McNamara purportedly admitted at her deposition that Plaintiff was eligible to take FMLA leave. (ECF No. 38 at 9.) While Plaintiff cites to pages 58 and 59 of McNamara's deposition testimony, only page 58 is part of the record and that page of McNamara's deposition—which generally discusses FMLA leave—does not state that Pinkard was eligible to take FMLA leave.[8] (See ECF

---

[8] Plaintiff's response to the Order to Show Cause also cites to one page of Lora Gellerstein's deposition that is similarly not part of the record. (ECF No. 38 at 9.)

13

Nos. 34-8, 34-25.) As such, this evidence is insufficient to defeat summary judgment. Moreover, even if McNamara did opine at her deposition that Pinkard was eligible for FMLA leave, such a conclusory statement would not establish whether Pinkard was, in fact, a covered employee under the specific statutory requirements of § 203(e)(2)(C)(ii). Notably, Plaintiff never even asserts that her affidavit, her deposition testimony, Martinez's deposition testimony, or any other exhibits in the record actually establish that she qualified as a covered employee under 29 U.S.C. § 203(e)(2)(C)(ii).

### 2. Plaintiff's FMLA Interference Claim Also Fails Because Plaintiff Has Not Established Prejudice

Even assuming arguendo that Plaintiff did qualify as an employee under § 203(e)(2)(C)(ii), her FMLA interference claim would also fail on a separate ground because Plaintiff has not shown that she was prejudiced by Defendants' alleged violation of the FMLA. Plaintiff's FMLA interference claim is based on the Defendants' alleged failure to provide her with notices about her rights under FMLA. However, "[t]o bring a successful action under the FMLA, an employee must show (1) that the employer interfered with, restrained, or denied the rights protected by the FMLA, and (2) that the employee has been prejudiced by the violation." Roberts v. Health Ass'n, 308 F. App'x 568, 569 (2d Cir. 2009).

The Court assumes arguendo that Defendants did not provide notice about FMLA rights that was required to be provided to covered employees in Plaintiff's circumstances. However, the mere failure to provide a required FMLA notice is insufficient to establish an interference claim. The employee must show prejudice and, here, the record contains no evidence of prejudice.

Plaintiff's affidavit states that she told Martinez that she "would be required to take limited time off for doctors' appointments and physical therapy to treat my extensive injuries," but "was unaware that I could request FMLA leave" because Defendants failed to provide her any notice of

14

her rights under the FMLA. (Pl. Aff. ¶ 46.) According to Plaintiff's affidavit, Defendants failed to notify her of her right to take FMLA leave and that, as such, she was "unaware of [her] right to job-protected leave under the FMLA." (Id. ¶¶ 37–38.) Plaintiff's affidavit goes on to state that "[d]espite the severity of my injuries, I was eager to resume work." (Id. ¶ 39.)

To show prejudice, Plaintiff must establish that she "would have acted differently (i.e., whether [she] would have sought leave under the FMLA) had [defendant] provided [her] with the requisite information." Lutes v. United Trailers, Inc., 950 F.3d 359, 369 (7th Cir. 2020). The record here does not include any evidence indicating that Plaintiff would have taken FMLA leave if she had been provided notice of her rights under the FMLA. Her affidavit and deposition testimony say nothing about this point. While Plaintiff's affidavit asserts that she was unaware of her rights under the FMLA, that alone is insufficient to establish prejudice. This is an additional reason why Defendants are entitled to summary judgment on Plaintiff's FMLA interference claim.[9]

### E. Supplemental Jurisdiction

Plaintiff maintains that, even if all her federal claims are dismissed, the Court should still exercise supplemental jurisdiction over her NYSHRL claims given the age of this case and the substantial delay and expense Plaintiff would face if she were required to litigate these claims in state court. The Court disagrees and dismisses Plaintiff's NYSHRL claims without prejudice so that she can pursue those claims in state court.

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); see generally Montefiore Med.

---

[9] Plaintiff already withdrew her retaliation claim under the FMLA. (ECF No. 34-50 at 20.)

Ctr. v. Teamsters Loc. 272, 642 F.3d 321, 332 (2d Cir. 2011). Supplemental jurisdiction is not mandatory, and courts should, under certain circumstances, "decline to exercise supplemental jurisdiction over a claim." 28 U.S.C. § 1367(c). These circumstances include instances where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Courts must "balance the values of judicial economy, convenience, fairness, and comity"—the "Cohill factors"—in determining whether to exercise supplemental jurisdiction. Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y., 464 F.3d 255, 262 (2d Cir. 2006) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)). In weighing these values, courts look to "the circumstances of [each] particular case." City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997). That said, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Cohill, 484 U.S. at 350 n. 7. In the end, the decision whether to exercise supplemental jurisdiction is within the court's "discretion[ ] and [is] not a litigant's right." Klein & Co. Futures, Inc., 464 F.3d at 263.

Although the Court assumes that the age of this case and the potential for further delay in state court weigh somewhat in Plaintiff's favor, other concerns counsel in favor of declining supplemental jurisdiction. The instant Order does not reach the central merits of Plaintiff's federal disability discrimination and retaliation claims—namely whether Plaintiff's alleged impairments qualify as disabilities and whether she was discriminated against and retaliated against. That point weighs against exercising supplemental jurisdiction as limited judicial economy would be gained from this Court taking up those issues. Defendants' summary judgment motion on the merits of Plaintiffs' NYSHRL claims must be still resolved. Additionally, Plaintiff's summary judgment

16

brief asserts that, for certain aspects of her disability discrimination claim under the NYSHRL, the governing standard is different than the standard applied in ADA suits. (ECF No. 34-50 at 21.) That point further counsels in favor of declining supplemental jurisdiction. Additionally, this case involves claims under New York state law concerning the conduct of a Suffolk County Legislator. Accordingly, comity concerns weigh against supplemental jurisdiction here. The Court ultimately finds, given all the Cohill factors and circumstances here, that it is appropriate to decline to exercise jurisdiction over Plaintiff's NYSHRL claims. Thus, the Court dismisses those claims without prejudice.

### III. CONCLUSION

For the reasons stated above, the Court: (1) dismisses Plaintiff's federal disability discrimination claims without prejudice for lack of subject matter jurisdiction; (2) denies Plaintiff's futile attempt to pursue disability discrimination claims under Section 1983 and rejects Plaintiff's request to submit further briefing concerning Section 1983; (3) grants Defendants summary judgment on Plaintiff's FMLA claims and dismisses those claims with prejudice; and (4) declines supplemental jurisdiction over Plaintiff's NYSHRL claims and dismisses those claims without prejudice.

The Clerk of Court is directed to enter judgment accordingly and to close this case.

**SO ORDERED.**

Dated: May 21, 2025
Central Islip, New York

                    /s/ (JMA)
                    JOAN M. AZRACK
                    UNITED STATES DISTRICT JUDGE